IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| DR. RAUL CHIRIFE, | § | |
| Plaintiff, | § | |
| vs. | § | |
| ST. JUDE MEDICAL, INC., et. al, | § | CASE NO. 6:08 CV 480 |
| Defendants. | § | PATENT CASE |

## MEMORANDUM OPINION AND ORDER

Before the Court is St. Jude Medical, Inc. ("SJM"), Pacesetter, Inc. ("Pacesetter"), and St. Jude Medical S.C., Inc.'s ("SJMSC") (collectively "Defendants") motion to transfer venue (Docket No. 13). Also before the Court is Dr. Raul Chirife's motion for leave to file supplemental facts regarding Defendants' motion to transfer venue (Docket No. 42). For the reasons set forth below, Defendants' motion is **DENIED,** and Dr. Chirife's motion for leave is **DENIED** as moot.

## BACKGROUND

Dr. Chirife, a citizen of Paraguay and resident of Argentina, filed this action on December 12, 2008 alleging that Defendants infringed upon his intellectual property rights. In his complaint, Dr. Chirife asserts claims for patent and copyright infringement along with five claims arising under California law. SJM and SJMSC are Minnesota corporations with their principal places of business in Minnesota. Pacesetter is a Delaware corporation with its principal place of business in Sylmar, California. Both Pacesetter and SJMSC are wholly owned subsidiaries of SJM. Defendants move to transfer this case to the United States District Court for the Central District of California.

1

## APPLICABLE LAW

Defendants argue that they are entitled to transfer under 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As always, a district court has broad discretion in deciding whether to order a transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*In re Volkswagen II*"). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*"). Whether a case "could have been filed" in the transferor venue is not an empty inquiry and requires defendants to prove both personal jurisdiction and venue in the transferor court. *See Hoffman v. Blaski,* 363 U.S. 335, 342-44 (1960); *Wolf Designs, Inc. v. Donald McEvoy Ltd.*, 355 F. Supp. 2d 848, 852 (N.D. Tex. 2005); *Frazier v. Commercial Credit Equip. Corp.*, 755 F. Supp. 163, 165 (S.D. Miss. 1991) ("[T]ransfer under section 1404(a) may properly be made only where the court to which transfer is sought would have been a proper venue and would have had personal jurisdiction over all of the defendants if it had been the original forum."). This is true regardless of whether defendants would be willing to consent to jurisdiction and venue before their requested forum. *See Hoffman*, 363 U.S. at 344 ("[I]t is immaterial [to the transfer analysis] that the defendant subsequently makes himself subject, by consent, waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum."); *Wolf Designs,* 355 F. Supp. 2d at 852 ("The fact that [the defendant] is now agreeable to having these cases heard in Georgia is irrelevant [to 1404(a) transfer analysis].").

Once the threshold inquiry is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re TS Tech*, 551 F.3d at 1319.

## APPLICATION

Here, Dr. Chirife argues that the Defendants, specifically SJM and SJMSC, have failed to show that they would be amenable to personal jurisdiction in the Central District of California. In a patent case, personal jurisdiction intimately relates to patent law, and Federal Circuit law governs the issue. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). A court can exercise personal jurisdiction over an out-of-state defendant if the forum state's long-arm statute permits jurisdiction without violating federal due process as delineated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945); *LSI Industries Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000); and *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998). Although federal courts hearing patent cases defer to the forum state's interpretation of

its long-arm statute, Federal Circuit law controls whether the exercise of personal jurisdiction comports with federal due process. *3D Sys.*, 160 F.3d at 1377.

In this case, the "forum state" corresponds to the transferee court—the Central District of California. Since SJM and SJMSC share Minnesota as their state of incorporation and principal place of business, they would qualify as out-of-state defendants with regard to personal jurisdiction in California. Generally, "[d]etermining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process. However, because California's long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, ___ F.3d ___, 2009 WL 1362463 at *4 (Fed. Cir. May 18, 2009) (internal citations and quotation marks omitted).

Thus, Defendants have the burden of showing that they have "minimum contacts" with the forum state to support jurisdiction over them. *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001). The minimum contacts requirement may be met by a showing of either "general" or "specific" jurisdiction over a defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). "Specific" jurisdiction exists when a defendant has contacts in the forum state and the controversy in a case "arises out of" or "relates" to those contacts. *Id.* Even when the controversy is unrelated to a defendant's contacts, "general" jurisdiction exists when the defendant's contacts with the forum state are "continuous and systematic." *Id.* at 414-16.

Here, SJM and SJMSC argue that the following contacts create "general jurisdiction" in

4

California[1]: 1) SJM has filed a corporate tax return in California for the years 2007 and 2008; 2) though it does not maintain an office in California, SJM has eight employees in California that work at the Pacesetter facility; 3) SJM "pays" a lease for a facility in Irvine, California[2]; 4) SJM occasionally transfers assets to subsidiaries in California; 5) Pacesetter, SJMSC, and other companies based in California are wholly owned subsidiaries of SJM; 6) SJMSC has a regional office in California and 149 employees who reside and work in California.

As a preliminary matter, SJM cannot base its "general jurisdiction" arguments on the California contacts held by other companies. *See Red Wing Shoe Co., v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota."). Thus, the fact that SJM owns or does business with companies with contacts in California (such as Pacesetter or SJMSC) does not allow it to rely on those contacts for jurisdictional purposes.

In total, SJM's "payment" of a single lease, filing of a corporate tax return, and employing eight people does not constitute "continuous and systematic" contacts with California. *See Autogenomics*, ___ F.3d ___, 2009 WL 1362463 at *5 (noting that the standard for "general jurisdiction" is "fairly high"); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 612 (5th Cir. 2008) (finding that a corporation making 5.2 million worth of purchases in Texas, having two employees in Texas, and entering into a contract with Texas companies was insufficient to support general jurisdiction); *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir.

---

[1] Neither Defendants' motion nor reply brief assert or provide any information for the Court to infer that this suit "arises out of or relates" to Defendants' California contacts. Therefore, the Court addresses Defendants' contacts with California as they relate to "general jurisdiction."

[2] It is unclear from the Defendants' declaration evidence whether SJM owns the lease on a California facility or simply "pays" for a lease owned by another company. *See* Krentz Declaration, Docket No. 21-2 at ¶ 5.

1999) ("The mere renting or ownership of property in a forum is not enough [to create a contact with that forum] when that property is not used to conduct business in the forum.").

Defendants have made no effort to identify whether SJM's California employees engage in business particularly relating to California, have cited no authority tending to show that their meager contacts with California are "continuous and systematic," and have tread very near violating Federal Rule of Civil Procedure 11 with their representations concerning the extent of SJM's business operations in California.[3] For "general jurisdiction" to exist "the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction." *See* 4 Charles Alan Wright & Aurthur R. Miller, Federal Practice and Procedure § 1067.5 & n.5 (3d ed. 2009) (collecting cases). In sum, while SJM certainly has some isolated contact with California, Defendants have not shown continuous and systematic contacts with California sufficient for "general jurisdiction" to exist.

Accordingly, Defendants have failed to show that this case "could have been filed" in the Central District of California. Because Defendants have not met this threshold analysis, the Court need not address the § 1404(a) transfer factors.

## CONCLUSION

For the aforementioned reasons, Defendants' motion to transfer is **DENIED**. Because

---

[3] In Defendants' motion to transfer venue, they represent that "SJM is a holding company that does not design, manufacture, or sell any products." Defendants' Motion, Docket No. 13 at 3. In their reply brief, after Dr. Chirife had contested SJM's amenability to personal jurisdiction in California, Defendants filed a declaration retreating from their initial statement and claiming that "SJM is primarily a 'holding company,' [and] still conducts limited commercial activities relating to its heart valve products . . . ." Krentz Declaration, Docket No. 21-2 at ¶ 6. Because the two statements are clearly inconsistent, the Court—without entirely discounting SJM's jurisdictional facts—merely assigns them less weight. *See Autogenomics*, ___ F.3d ___, 2009 WL 1362463 at *5 (allowing only "reasonable" inferences from the facts to enter the jurisdictional analysis).

analysis of the § 1404(a) transfer factors was unnecessary, Dr. Chirife's "supplemental facts" regarding those factors are no longer relevant. Thus, Dr. Chirife's motion to supplement is **DENIED** as moot.

**So ORDERED and SIGNED this 16th day of June, 2009.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**